FILED
SEP 10 2002

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

✓ Priority
✓ Send
___ Clsd
✓ Enter
No JS-5/JS-6
___ JS-2/JS-3
___ Scan Only

ENTERED
CLERK, U.S. DISTRICT COURT
SEP 11 2002
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BABETTE ORY, individually, and on behalf of those similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COLUMBIA HOUSE MUSIC CLUB; BMG DIRECT MARKETING, INC.,<br><br>　　　　Defendants. | Case No. CV 02-02342 DDP (AJWx)<br><br>**ORDER DENYING THE DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>[Motions filed on 05/30/02] |

　　　This motion comes before the Court on the defendants' motions to dismiss. After reviewing and considering the materials submitted by the parties, the Court denies the motions.

**BACKGROUND**

　　　On March 21, 2002, plaintiff Babette Ory, individually and on behalf of others similarly situated, filed a complaint against the defendants Columbia House Music Club ("Columbia House"), BMG Direct Marketing, Inc. ("BMG Direct"), and Does 1 through 10, inclusive, alleging violations of the Copyright Act of 1976, 17 U.S.C. § 101 et seq, or, in the alternative, breach of contract and accounting. This matter relates to the payment of royalties to the plaintiff

for use of a copyrighted and registered musical composition, "Muskrat Ramble," of which the plaintiff is the alleged legal owner.

The plaintiff alleges that the defendants have reproduced and distributed phonorecords containing Muskrat Ramble without a license to do so under 17 U.S.C. § 115.[1] In the alternative, the plaintiff alleges that, if the Court finds that the defendants do in fact have a license, the defendants are required to pay the plaintiff the full statutory royalty rate pursuant to 17 U.S.C. § 115 for their reproduction and distribution of Muskrat Ramble; and that the defendants' failure to do so constitutes a breach of contract. Finally, the plaintiff requests an accounting to determine the amount of money received by the defendants and wrongfully withheld from the plaintiff and the putative class based on such alleged violations of law.

**DISCUSSION**

A. <u>Legal Standard</u>

The defendants move the Court to dismiss the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. <u>Newman v. Universal Pictures</u>, 813 F.2d 1519, 1521-22 (9th Cir. 1987). The court must view all allegations in the complaint in the

---

[1] The plaintiff styles her complaint as a class action, suing the defendants on behalf of herself and "all persons or entities who own, or are the beneficial owners of, a copyrighted musical composition or a portion thereof, which was used by the defendants in a phonorecord" without a proper license. (Compl. ¶ 20.)

2

light most favorable to the non-movant and must accept all material allegations -- as well as any reasonable inferences to be drawn from them -- as true. <u>North Star Int'l v. Arizona Corp. Comm'n</u>, 720 F.2d 578, 581 (9th Cir. 1983).

B. <u>Analysis</u>

Title 17 U.S.C. § 115 allows any person to obtain a "compulsory license" to make and distribute phonorecords of a nondramatic musical work. Among other things, a person seeking such a license must serve notice of intention to do so on the copyright owner. 17 U.S.C. § 115(b). The Copyright Act also sets forth a statutory royalty rate (the "Statutory Rate") to be paid by the compulsory licensee to the copyright owner for the distribution of every phonorecord under the license. 17 U.S.C. § 115(c). However, the Copyright Act also provides that a person eligible for a compulsory license may negotiate with the copyright owner and agree upon royalty rates other than the Statutory Rate. <u>See</u> 17 U.S.C. § 115(b)(2), (c)(3). For the present purposes, a license that results from such negotiations -- in contrast to the compulsory license which requires no negotiations -- shall be referred to as a "negotiated license."

The Court assumes for the purposes of this motion that, as alleged in the complaint, the named defendants made and distributed phonorecords containing Muskrat Ramble and paid the plaintiff royalties in an amount representing 75% of the Statutory Rate. The crux of this case is whether, in carrying out these activities, the defendants had a negotiated license, a compulsory license, or no license at all. The plaintiff's first cause of action, for violation of the Copyright Act, is based on the allegation that the

defendants did not have a negotiated license and had not complied with the statutory requirements for obtaining a compulsory license. (Compl. ¶¶ 10-14.) The plaintiff's breach of contract claim is based on the argument that, should the Court determine that the defendants did have a license, the defendants have become obligated under an implied contract to pay the plaintiff the Statutory Rate, and the defendants' payment of only 75% of the Statutory Rate constitutes a breach of that contract.

The defendants, on the other hand, ask the Court to find that they had negotiated licenses with the plaintiff that can be implied by the parties' conduct and that their payment of 75% was appropriate under the implied negotiated licenses. The defendants argue that, as a result of the plaintiff's alleged acceptance of payments at 75% of the Statutory Rate without protest, an implied, negotiated license was established between the plaintiff and the defendants. (See e.g., BMG's Mot. at 9; Columbia's Mot. at 7-8.)

Taking the facts alleged in the complaint as true, the Court denies the motions to dismiss. The precise relationship and course of conduct between the plaintiff and the defendants is a mixed issue of law and fact, and the Court is reluctant to deny the plaintiff the opportunity to show that facts exist that support her case. "Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Abramson v. Brownstein, 897 F.2d 389, 391 (9th Cir. 1990) (internal quotations and citation omitted).

The Court disagrees with the defendants' contention that the facts properly before the Court mandate the conclusion that implied


negotiated licenses existed between the plaintiff and the defendants. The defendants are asking the Court to reach this legal conclusion on facts that are, consistent with the general requirements of notice pleading, relatively sparse. While the defendants may eventually be able to present facts that could establish the existence of an implied license, the plaintiff's complaint and the facts properly before the Court do not demonstrate that the plaintiff will be <u>unable</u> to prove that <u>no</u> such license existed.

For instance, BMG Direct states that "the Complaint makes clear that Plaintiff accepted . . . payments without objection." (BMG's Mot. at 7.) However, the plaintiff's complaint states that "Defendants were provided with notice of their infringing activity by various means and on numerous occasions . . .." (Compl. at ¶ 18.) While the complaint could be more clear about the circumstances of these protests and who, precisely, made them, the plaintiff's failure in this regard is not fatal to her claims. <u>See</u> <u>Securities Investor Prot. Corp. v. Vigman</u>, 764 F.2d 1309, 1318 (9th Cir. 1985) ("'a complaint need only set out a generalized statement of facts from which [a] defendant will be able to frame a responsive pleading.'" (quoting Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure: Civil</u> § 1357 (1969))); <u>Ybarra v. City of San Jose</u>, 503 F.2d 1041, 1044 (9th Cir. 1974) ("mere vagueness or lack of detail is not ground for a motion to dismiss . . ." (internal quotations and citation omitted)). The plaintiff's complaint is both sufficient in its factual allegations and yet not conclusive on the issue of whether there was an implied negotiated contract between the plaintiff and the defendants.

For these reasons, the Court declines to rule on the applicability of <u>Wixen Music Publishing, Inc. v. CBS Records, Inc.</u>, No. CV 90-03758 (C.D. Cal. Dec. 27, 1990) (order granting summary judgment) to the instant case.[2] While <u>Wixen</u> does appear to be factually similar to the case now before the Court, the Court does not believe that the record in this case has been sufficiently developed to determine whether <u>Wixen</u>, which itself is not binding precedent on this Court, should guide the Court's decision here. The Court notes that <u>Wixen</u> was decided at the summary judgment stage; a similar development of the factual record will be necessary here.

**CONCLUSION**

The defendants ask the Court to conclude that an implied license existed between the plaintiff and the defendants, defeating the plaintiff's claims. The plaintiff maintains in her complaint that the defendants had neither a compulsory or negotiated license, implied or otherwise, and she has not admitted facts that foreclose that possibility. Thus, viewing the allegations in the complaint

---

[2] <u>Wixen</u> involved a copyright infringement claim based on the alleged manufacture and distribution of phonorecords without a license. The plaintiffs in <u>Wixen</u> alleged that the defendant failed to obtain express "mechanical" licenses in advance and failed to pay the plaintiffs royalties at the Statutory Rate. <u>Wixen Music Publishing, Inc. v. CBS Records, Inc.</u>, No. CV 90-03758, at 1 (C.D. Cal. Dec. 27, 1990). The court in <u>Wixen</u> found that "the named plaintiffs' acceptance and negotiation of royalty payments at the customary record club industry rate, without restrictive endorsement or other effective notice of protest, ratified an implied license to [the defendant] for its use of their copyrighted songs for the past periods covered by the checks and created an implied license for future periods." <u>Id.</u> at 13. On this basis, the court in <u>Wixen</u> granted summary judgment in favor of the defendant. <u>Id.</u> at 16.

in the light most favorable to the plaintiff, the Court denies the defendants' motions to dismiss.

IT IS SO ORDERED.

Dated: 9/10/02

DEAN D. PREGERSON
United States District Judge